# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **DENARD-DARNELL NEAL,** | ) | **CASE NO. 7:19CV00139** |
| | ) | |
| Petitioner, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **WARDEN STREEVAL,** | ) | **By: Glen E. Conrad** |
| | ) | **Senior United States District Judge** |
| Respondent. | ) | |

The petitioner, Denard-Darnell Neal, a federal inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, alleging that he was denied safe prison conditions and due process during a prison disciplinary proceeding. Upon review of the record, the court concludes that Neal is entitled to summary judgment on his due process claim, but that the remainder of his claims must be dismissed as inappropriately addressed in a § 2241 petition.

I.

Congress has delegated authority to the Federal Bureau of Prisons ("the BOP") to manage the federal prison system, including such issues as inmate discipline. See 18 U.S.C. § 4042(a)(3). Pursuant to this authority, the BOP has promulgated a code of prohibited acts and rules for inmate discipline for violations of those actions. See 28 C.F.R. 541.1-541.8.

Under these rules, when BOP staff has a reasonable belief that an inmate has violated a section of the prohibited acts code, staff will prepare an incident report, describing the incident and the prohibited act the inmate is charged with committing. The inmate will ordinarily receive

a copy of the incident report within twenty-four hours. Thereafter, staff will investigate the charge and ask the inmate if he wants to make a statement or exercise his right to remain silent.

When the investigation is completed, a unit discipline committee ("UDC"), made up of staff who were not involved in the incident or its investigation, will review the incident report. The inmate has an opportunity to appear, make a statement, and present documentary evidence on his own behalf to the UDC. The UDC makes a finding, based on the weight of the evidence, that the inmate committed the prohibited act or a similar prohibited act, that he did not commit a prohibited act, or that the disciplinary report is appropriately referred to a discipline hearing officer ("DHO") for further proceedings. In cases referred to the DHO, the UDC advises the inmate of his rights to request a staff representative, request witness statements, make a statement, and present documentary evidence.

The DHO, like the UDC, must be impartial—someone not involved in the incident or its investigation. The inmate will receive written notice of the charge at least 24 hours before the DHO hearing. The charged inmate can appear in person at the DHO hearing, present documentary evidence, and make a statement on his own behalf. The inmate may request witness participation, but witnesses are granted at the DHO's discretion and may participate by submitting written statements. Only the DHO can question witnesses who appear at the hearing, although the inmate may submit questions for the DHO to pose.

The DHO will consider all evidence presented at the hearing. He must base his decision on at least some facts, and if there is conflicting evidence, on the greater weight of the evidence. The DHO determines one of the following: that the inmate committed the prohibited act charged or a similar prohibited act; that the inmate did not commit the prohibited act charged; or that the incident report is appropriately referred for further investigation, review, and disposition. After

the hearing, the DHO prepares a record of the proceedings to indicate the advisement of inmate rights, the DHO's decision and the specific evidence on which it relies, each sanction imposed, and the reasons for each sanction.

On November 15, 2017, while Neal was incarcerated at the United States Penitentiary Victorville ("USP Victorville"), staff member B. Chrisman prepared an incident report, charging Neal with violating BOP's prohibited act code for refusing to accept a work or program assignment, 28 C.F.R. § 541.3(b) (listing prohibited acts and sanctions).[1] The report indicated that:

> On November 15, 2017, at approximately 4:10 p.m., while conducting moves from the Special Housing Unit to general population[, Officer Chrisman] approached cell 143 where inmate Neal, Denard, Reg. No. 23843-008 was housed. [Officer Chrisman] ordered inmate Neal to submit to hand restraints to be moved to general population. Inmate Neal refused to submit to restraints and to be moved to general population. This is the 3rd order out.

Mem. Supp. Mot. Dism. Ex. 1, Attach. A § 11, ECF No. 9. A copy of the incident report was provided to Neal at approximately 5:20 PM. Id. at §§ 15-16. At this time, the investigating officer asked for Neal's statement about the charge and informed him that he had the right to remain silent and that his silence might be used to draw an adverse inference, but could not be used, without additional evidence, to support a finding that he committed a prohibited act. Id. at § 23. Neal indicated that he understood his rights, but declined to make any statement about the charge. Id. at § 24. The investigator noted that Neal was "not a protective custody case and refused to program." Id. at § 25. The charge was referred to the UDC for administrative processing and ended up further referred to a DHO for a hearing. Id. at § 27.

---

[1] This summary of events is taken from the documentation of the disciplinary proceedings attached to the respondent's motion to dismiss and is undisputed, unless otherwise noted.

Following the UDC Hearing, a staff member provided Neal with an inmate rights at discipline hearing form, which Neal signed, indicating that he did not request a staff representative or any witnesses at his DHO hearing. Ex. 1, Attach. B. Neal also signed a notice of discipline hearing, acknowledging that he had been advised of his rights. Ex. 1, Attach. C.

A DHO conducted Neal's initial hearing on November 29, 2017. Ex. 1, Attach. D. The DHO read and reviewed Neal's due process rights, and Neal waived his right to a staff representative and to call any witnesses. Id. at §§ II, III, V. Neal stated during the hearing, "I'm not going back. But I was never asked to go." Id. at § III. Neal claims that the reporting officer falsely stated that on November 14, 2017, he had ordered Neal to move to general population at 4:10 p.m. (during count, when no inmate movement is permitted). Neal states that he asked the DHO to review surveillance camera footage to verify his statement and discredit Chrisman's report, but the DHO refused to honor this request.[2] The DHO found Neal guilty of committing the prohibited act as charged. Id. at § V. In making this finding, the DHO relied on (1) the reporting officer's statement, (2) the UDC portions of the disciplinary process, (3) Neal's disciplinary history, revealing he had been sanctioned for this offence twice in the preceding three months, (4) Neal's refusal to make any statements of defense throughout the proceedings, leading to an adverse inference, and (5) Neal's statement, "I'm not going back. But I was never asked to go." Id.

The DHO sanctioned Neal with the disallowance of fourteen days of good conduct time and two months restriction of email access. Id. at § VI. According to the DHO's written record, he imposed these sanctions because "[a]ny action on the part of an inmate to refuse to program

---

[2] In Neal's verified responsive pleading, he states that he asked the UDC to require the DHO to view the video footage and that he later asked the DHO to stop the hearing to review the footage. See Pl.'s Resp. 8, ECF No. 21-1. Neal also presents a copy of his administrative appeal, repeating that he asked the DHO to review the camera footage to verify the truth of Neal's statement that no one came to his cell at the time listed on the incident report to order him to move to general population. See Pl.'s Reply Ex. 1, ECF No. 34-1.

hinders staff's ability to effectively manage a correctional facility, and increases the number of inmates quartered in a restrictive housing status, which limits the number of available beds for inmates who require such placement." Id. at § VII. The DHO record further stated that "[t]he disallowance of Good Conduct Time was imposed based on the severity and repetitive nature of the offense and the inmate's sentence commitment. Loss of privilege sanctions were imposed to deter the inmate from engaging in prohibited behavior in the future." Id.

Neal was advised of his appeal rights and provided a copy of the DHO report. Id. at §§ VIII & IX. He appealed the disciplinary action. Although full copies of his appeals are not in the record, it is undisputed that he has fully exhausted his administrative remedies.

Neal filed this § 2241 petition in December of 2018 in the United States District Court for the District of Columbia, which transferred his case to this district, where he is now confined at the United States Penitentiary Lee ("USP Lee") in Jonesville, Virginia. Liberally construed, the petition alleges that (a) Neal was denied due process at USP Victorville when he asked the DHO to review the surveillance camera footage of the incident, but the DHO refused, and appellate reviewers also failed to review the footage; (b) prison officials at USP Victorville failed to adequately investigate Neal's prior two refusals to return to general population, based on his personal safety concerns because of an extensive effort in the BOP to cover up staff killings of black prisoners, of whom Neal was to be the second; (c) BOP Program Statement 5270.09 is unconstitutional in that it allows the BOP to impose sanctions on an inmate for refusing to return to general population when his life has been and continues to be threatened by staff; (d) the BOP system allowed staff at USP Victorville to plant weapons in Neal's personal property on two occasions; (e) when Neal's cell mate asked to be moved because of friction between him and Neal, the USP Lee warden told the cellmate to stab Neal if he wanted to be moved to a different cell;

and (f) USP Lee has violated BOP cell size and safety requirements by making Neal live with a cellmate in a cell not suitable for two inmates.[3]

As relief in this action, Neal asks the court to hold an evidentiary hearing and view the security video as he requested at his disciplinary hearing; to expunge his disciplinary conviction and restore his good time credits; to enjoin BOP officials from assaulting him or housing him in inadequate living quarters; to declare Program Statement No. 5270.09 unconstitutional as sanctioning punishment for an inmate who refuses a housing assignment based on his own safety concerns; to require all prison personnel to wear functioning body cameras during all interactions with prisoners; and to transfer Neal to "a non-gang active" prison facility.

The respondent has filed a motion to dismiss, or in the alternative, for summary judgment, attaching documentation of the challenged disciplinary proceedings. Neal has responded, making the motion ripe for consideration. Neal has also filed a motion for summary judgment, which the respondent has opposed.[4]

II.

The court should grant summary judgment only when the pleadings and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment

---

[3] Neal contends that issues presented in claims (b) through (f) violated his right to equal protection.

[4] Neal's submissions after the motion to dismiss mention other prison conditions problems, including his insistence that he should be transferred away from USP Lee for his own safety. He has not moved to amend his pleadings to add claims concerning these issues, nor could he, inasmuch as the court herein concludes that such conditions claims are not appropriately raised or addressed in a § 2241 petition. Moreover, a litigant cannot use a response to a dispositive motion to amend his initial pleading. See Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend complaint through argument in his brief opposing summary judgment); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (same). Accordingly, to the extent that Neal's later submissions attempt to raise new claims about the conditions of his confinement at USP Lee, the court does not consider these issues to be part of this action under § 2241.

as a matter of law."[5] Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The relevant inquiry is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014).[6]

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. Anderson, 477 U.S. at 256. When a motion for summary judgment is made and is properly supported by affidavits or other documentation, the nonmoving party may not rest on the mere allegations in his complaint. Id. at 255. He must also present more than conclusory assertions, "mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. Id. at 256-57. A pro se litigant's verified complaint or responsive pleading must be considered as an affidavit and may, standing alone, defeat a motion

---

[5] The respondent titles his pleading as a motion to dismiss or, in the alternative, motion for summary judgment. Because the court cannot decide Neal's due process claim without consideration of the documentation attached to the respondent's motion, the court must analyze this claim under the summary judgment standard of Rule 56. See Fed. R. Civ. P. 12(d).

[6] The court has omitted internal quotation marks, alterations, and/or citations here and throughout this memorandum opinion, unless otherwise noted.

7

for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). When state law has created the right to earn good time, and deprivation of earned good time is a sanction authorized only for major misconduct, an inmate has a protected liberty interest in his earned good time. Wolff v. McDonnell, 418 U.S. 539, 556–558 (1974).

On the other hand, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. Thus, the inmate facing a prison disciplinary charge with earned good time at stake enjoys these limited due process protections: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff, 418 U.S. at 563–567). The decision maker should be sufficiently impartial to satisfy due process protections against arbitrary rulings. Wolff, 418 U.S. at 571.

Due process protections also require that "some evidence supports the decision" to discipline a prisoner by revoking good time credits. Hill, 472 U.S. at 455. The "some evidence"

standard is satisfied if "there is any evidence in the record that could support" the disciplinary decision. Id. at 454.

It is undisputed here that Neal had a protected liberty interest in his earned good conduct credits and was entitled to the due process protections outlined in Wolff before those credits could be revoked. The respondent argues that the documentation of the disciplinary proceedings provided in support of his motion establishes that the DHO provided Neal with the required protections under Wolff and Hill before depriving him of good time credit. The court cannot agree.

At the time the parties filed their summary judgment motions, they did not have the benefit of the decision in Lennear v. Wilson, 937 F.3d 257 (4th Cir. 2019). In Lennear, the court of appeals held that an inmate at risk of being deprived of good time credits has "a qualified right to obtain and present video surveillance evidence" as documentary evidence under Wolff, if it does not present particularized security concerns and it "aids" his defense. Id. at 262, 273, 278. In his verified petition and other submissions, Neal states that he asked the DHO to review the video footage to bolster Neal's statement, and discredit the reporting officer's account, as to whether the officer ordered Neal to move to general population at the time stated in the incident report. See, e.g., Pet. ¶ 14, ECF No. 1. Neal also provided evidence that his disciplinary appeal documents asked reviewers to consider the video footage, but they allegedly failed to do so. The respondent's evidence does not include any of the appeal documents and shows, at the most, that no officer documented a request or a refusal to review the video footage during the disciplinary proceedings.

Clearly, the DHO had some evidence as required under Hill on which to find Neal guilty of the charge—as listed on the DHO's record. Hill's "some evidence" standard, however, "addresses the evidentiary requirements of due process but in no way abrogates the due process requirements enunciated in Wolff. Accordingly, Hill's some evidence standard is irrelevant in

determining whether a denial of procedural due process is harmless." Lennear, 937 F.3d at 276-77. Rather, to determine "whether prison officials' failure to disclose or consider evidence was harmless, courts must determine whether the excluded evidence could have aided the inmate's defense." Id. at 277.

Neal contends, and the court agrees, that the requested video footage could have aided his defense. Specifically, this footage could have verified Neal's statement that no officer came to his cell at the time of day stated on the incident report to order Neal to go to general population. Thus, the court cannot find from the record now before the court that the DHO and the appellate reviewers committed harmless error by denying Neal's request that they view the footage as part of the evidence.

The respondent's opposition to Neal's motion for summary judgment argues that Neal's motion must be denied merely because he offers no documentary evidence or testimony in support of his motion. While no sworn affidavit or evidence is attached to Neal's motion itself, the court must consider Neal's verified petition as an affidavit, to the extent that it is based on personal knowledge. Williams, 952 F.2d at 823. As discussed, the petition states that Neal asked the DHO and reviewers during his disciplinary appeals to consider the video footage that could have aided his defense. In response to Neal's motion, the respondent has not offered any affidavit based on personal knowledge, an audio recording of the hearing, or any other evidence addressing why the DHO and other reviewers did not consider the video footage. In short, the respondent fails to create a genuine issue of material fact in dispute so as to preclude summary judgment for Neal on his due process claim, based on his uncontroverted, sworn pleadings. Accordingly, the court concludes that as to claim (a), alleging denial of due process, the respondent's motion must be

denied, and Neal's summary judgment motion must be granted. As relief, the court will direct BOP officials to provide Neal a new disciplinary hearing on the charge at issue or to dismiss it.

The remainder of Neal's claims in this action, however, are not appropriately raised in a § 2241 petition. Such petitions are intended for an inmate's challenge to "the very fact or duration of his physical imprisonment." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). On the other hand, courts generally agree that an inmate's challenges to the conditions of his confinement are appropriately raised not in a § 2241 petition, but in a civil rights action Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (establishing cause of action for damages when federal officer acting under color of federal authority violates plaintiff's constitutional rights). See, e.g., Rodriguez v. Ratledge, 715 F. App'x 261, 265-66 (4th Cir. 2017) (unpublished) (finding transfer to supermax prison was conditions of confinement claim improperly raised in § 2241 petition), cert. denied, No. 17-8768, 2018 WL 2064983 (2018); Braddy v. Wilson, 580 F. App'x 172, 173 (4th Cir. 2014) (unpublished) (deciding that when petitioner alleged constitutional violations "regarding only the conditions of his confinement," not the fact or duration of his sentence, his claims were properly brought under Bivens, and not in § 2241 petition); Glaus v. Anderson, 408 F.3d 382, 388 (7th Cir. 2005) (holding that filing a § 2241 challenge to a condition of confinement was improper).

Neal's claim (a) is a cognizable § 2241 claim, because it challenges the duration of his confinement as impacted by the disallowance of his earned good conduct time. See Preiser, 411 U.S. at 500. Conversely, Neal's remaining claims essentially assert that BOP officials have failed to protect him from unsafe conditions, sanctioned him for trying to protect himself by refusing a move to general population, allowed staff to frame him for other disciplinary charges, and failed to provide appropriately sized cells or cell moves based on safety. These claims do not challenge

either the fact or the length of his confinement in any respect, and he is not seeking habeas relief for the violations they allege. Thus, they are not properly raised in a § 2241 petition. Rather, these claims must be raised, if at all, in a civil rights action under Bivens, after full exhaustion of administrative remedies, pursuant to 42 U.S.C. § 1997e(a), and compliance with filing costs, pursuant to 28 U.S.C. § 1915(b). Therefore, as to these claims, the court will deny Neal's summary judgment motion,[7] and grant the respondent's motion to dismiss with prejudice under § 2241, but without prejudice to Neal's right to file the claims in an action under Bivens.

III.

For the reasons stated, the court concludes that Neal is entitled to summary judgment on claim (a), alleging deprivation of good time credits without due process, and the respondent's motion must be denied as to this claim. As habeas corpus relief, the court will direct the respondent to vacate Neal's disciplinary conviction, restore his forfeited good conduct time, and provide him a new disciplinary hearing or dismiss the charge. The court also concludes that Neal's motion for summary judgment must be denied, but respondent's motion must be granted

with prejudice, as to the remaining claims under § 2241, but without prejudice to Neal's right to raise them in a new and separate action under Bivens. An appropriate order will issue this day.

---

[7] Neal argues that he is entitled to summary judgment on these claims because the respondent failed to address these claims on the merits, which Neal mischaracterizes as an admission that the alleged violations occurred. In fact, the respondent has defended against these claims by moving for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because Neal's conditions claims simply do not state any claim for relief under § 2241, as the court has determined, they are properly dismissed for that reason without any consideration of their merits in this case.

The clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

**ENTER**:  This 26th day of March, 2020.

_____
Senior United States District Judge